GOULD, INC., Plaintiff,

v.

MITSUI MINING & SMELTING CO., et al., Defendants.

No. C85–3199.

United States District Court,
N.D. Ohio, E.D.

June 7, 1990.

Maynard F. Thomson, Jones Day Reavis & Pogue, Cleveland, Ohio, for plaintiff.

Brice M. Clagett, Covington & Burling, Washington, D.C., Patricia Hemann, Hahn Loeser & Parks, Cleveland, Ohio, Lance Gotthoffer, Marks Murase & White, New York City, John D. Joliffe, Black McCluskey Souers & Arbaugh, Canton, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge, Sitting by Designation.

In this case, the law firm of Jones, Day, Reavis & Pogue (Jones, Day) represents plaintiff Gould, Inc. (Gould), in an action by Gould against, among others, defendants Pechiney and Trefimetaux (Pechiney). The issue before the court is defendants' motion to disqualify plaintiff's counsel. Defendants claim that Jones, Day's representation of Gould involves a conflict of interest with its representation of Pechiney, in

patent matters, and of IG Technologies, which is a wholly owned subsidiary of Pechiney. Defendants further claim that the conflict of interest requires the court to disqualify Jones, Day from representing Gould in this litigation. The parties fully briefed the issues, and after hearing oral argument on May 2, 1990, the court stated on the record that this motion would be denied. As indicated in a written order on that same date, the court will now expand upon its reasons for denying defendants' motion.

### A. Patent Representation

Gould filed this suit on October 23, 1985, against, among others, Pechiney and Trefimetaux,[1] alleging unfair competition, unjust enrichment, and violation of the Racketeer Influenced and Corrupt Organizations (RICO) provisions of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961 *et seq.*[2] This action arises out of defendants' alleged misappropriation of Gould trade secrets concerning the manufacture of electrolytic copper foil. At the time the complaint was filed, the Chicago law firm of Leydig, Voit & Mayer was lead counsel, and the Cleveland office of Jones, Day was local counsel, though both firms were signatories to the complaint. On June 27, 1986, the court[3] denied defendants' motion to dismiss Gould's complaint, and an appeal followed. This case was stayed pending the outcome of that appeal.

Prior to 1987, Pechiney was represented by the Chicago law firm of McDougall, Hersh & Scott on patent matters in the United States. The matters handled by McDougall, Hersh & Scott have no connection whatsoever to any of the issues presented in the instant case. Effective February 1, 1987, Jones, Day merged with McDougall, Hersh & Scott. On May 21, 1987, Jones, Day sent a letter to Pechiney informing it of the merger and the fact

---

1. Pechiney is a nationalized company of France. Trefimetaux, at the time the complaint was filed, was a subsidiary of Pechiney.

2. The RICO allegations against all defendants were dismissed in an order dated May 2, 1990.

3. This case was originally assigned to Judge Alice M. Batchelder in the Northern District of Ohio, and it was Judge Batchelder who issued the June 27, 1986, order. This case was transferred to Judge Charles W. Joiner early in 1990.

that Jones, Day was representing Gould against Pechiney in this case. The letter sought Pechiney's consent, pursuant to the Code of Professional Responsibility, to Jones, Day's continued representation of Gould against Pechiney in the instant case. The letter stated that "Jones, Day has been representing Gould in the capacity of local counsel." The letter also arranged for the implementation of chinese-wall procedures to insure that no dissemination of client confidences would occur. Pechiney consented to Jones, Day's representation of Gould in this case by a May 29, 1987, notation on the letter Jones, Day sent to Pechiney. Jones, Day continues to represent Pechiney on patent matters to this day.

In August of 1988, the Sixth Circuit reversed in part the denial of defendants' motion to dismiss, and remanded the case so that further evidence could be produced on the motion. *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445 (6th Cir. 1988). After discussions with the parties the court entered two orders in early November 1989. The first order set a schedule for the parties to conduct additional discovery relevant to defendants' motion to dismiss, and set an evidentiary hearing for March of 1990. The second order was a confidentiality order which limited disclosure of confidential information obtained through discovery, to lead counsel for all parties. Leydig, Voit & Mayer had access to confidential materials under this order, but Jones, Day did not.

Subsequently, Gould moved for the withdrawal of Leydig, Voit & Mayer as counsel, asking that Jones, Day be permitted to become sole counsel for Gould in this case. No objections to this motion were filed, and the court granted this motion on February 15, 1990. As a result, the parties stipulated to an amendment of the confidentiality order to permit access by Jones, Day to confidential materials in this case. According to counsel for defendants, they learned only in early March of 1990 that Jones, Day was representing Pechiney in connection

with patent matters in the United States. Given that Jones, Day had now become sole counsel for Gould, defendants immediately asked Jones, Day to withdraw as counsel for Gould. Jones, Day refused, and defendants filed the instant motion on March 7, 1990.

### B. IG Technologies Representation

In July of 1989, Pechiney acquired IG Technologies, Inc. (IGT), an Indiana corporation. Jones, Day represented IGT in various matters prior to this acquisition, and continues to represent IGT in contractual, licensing and related matters to this day. There is no connection between the matters Jones, Day handles for IGT and this litigation, and no evidence has been presented that Jones, Day has obtained any information about Pechiney through its representation of IGT.

At no point since Pechiney acquired IGT has Jones, Day attempted to obtain Pechiney's consent to Jones, Day's continuing representation of both IGT and Gould. According to defendants, they did not learn of Jones, Day's continuing representation of IGT until February 28, 1990, and they immediately requested that Jones, Day withdraw as counsel for Gould in this case. When Jones, Day refused, the instant motion was filed.[4]

*Discussion*

Defendants argue that Jones, Day is involved in two independent conflicts of interest in its representation of Gould, and either one requires that Jones, Day be disqualified. First, Jones, Day is representing Gould in a suit against Pechiney, whom Jones, Day represents in patent matters as well. Jones, Day is therefore suing a current client on behalf of another current client, and defendants insist that this requires disqualification. Defendants argue that the 1987 consent by Pechiney only permitted Jones, Day to act as local counsel in this case, and did not extend to their representing Gould as lead counsel. Second, defendants contend that a separate current-client conflict exists because Jones,

---

**4.** Gould, Jones, Day's client in the instant litigation, has consented to Jones, Day's continuing representation of Pechiney in patent matters and, representation of IGT also.

Day represents both Gould and IGT, a subsidiary of Pechiney. Defendants argue that the ethical rules for attorneys are even more clearly violated in this instance, as Jones, Day never attempted to obtain Pechiney's consent to its representation of both Gould and IGT.

Jones, Day responds that Pechiney's 1987 consent allows Jones, Day to act as either local or lead counsel for Gould, because there is no significant distinction between the two capacities. In addition, it contends that this consent is also in effect as to its representation of IGT, because once Pechiney consented to Jones, Day's representation of both Gould and Pechiney, the consent extended to representing Gould and a subsidiary of Pechiney. Jones, Day concludes that it has the consent of all interested parties to its continued representation of Gould in this case, therefore it has acted in accordance with governing ethical standards.[5]

■ The court has broad discretion in determining whether counsel should be disqualified in ongoing litigation. *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir. 1975); *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 610 F.Supp. 1319, 1322 (D.Del.1985); *Sherrod v. Berry*, 589 F.Supp. 433, 436 (N.D.Ill.1984). However, the law requires the discretion to be exercised wisely, and with due regard to lawyers' ethical standards. The issue arising from the application of these standards cannot be resolved in a vacuum, and the ethical rules should not be blindly applied without consideration of relative hardships. Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts. *Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 567 (S.D.N.Y.1987).

■ At issue here is Canon 5 of the Model Code of Professional Responsibility, and particularly DR 5–105, which provides:

**DR 5–105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer**

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

Two separate questions must be answered in order to resolve this motion: first, whether Jones, Day has violated DR 5–105; and second, in the event that the first question is answered in the affirmative, whether this violation requires Jones, Day's disqualification in this case. The importance of this second question cannot be understated, as disqualification of counsel in an action which has been pending for some

---

5. Jones, Day also argues that defendants have waived any claim of conflict of interest by Pechiney's consent in 1987 and because Pechiney has been aware for three years of Jones, Day's active participation in this case, yet has only now filed a motion to disqualify. This argument is not applicable to the IGT conflict be-

cause it arose in July of 1989, and defendants contend that they first became aware of this conflict at the end of February 1990. Since the court concludes that Jones, Day violated the ethical rules only concerning the IGT representation, this waiver argument does not affect the outcome of defendants' motion.

time is but one of several alternatives and is a drastic measure which courts will not impose unless absolutely necessary. *Panduit v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed.Cir.1984); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982). The court will discuss the patent representation and IGT representation issues separately.

## A. Patent Representation

■ There is no dispute that Jones, Day's representation of Gould against Pechiney in this litigation, along with its representation of Pechiney in patent matters, constitutes a conflict of interest as envisioned by DR 5–105. It is equally clear that in accordance with DR 5–105(C), Jones, Day had consent to its continued representation as local counsel for Gould in May of 1987. In light of Jones, Day's assumption of sole responsibility for the Gould litigation earlier this year, the question now before the court is whether the 1987 consent by Pechiney extends to Jones, Day's present status as Gould's sole counsel. If so, this conflict does not violate DR 5–105, as both Pechiney and Gould have consented to Jones, Day's representation of each of them. If not, then DR 5–105 has been violated and the court must determine whether disqualification is appropriate in this case.[6]

The court concludes that the May 29, 1987, consent by Pechiney is as valid now that Jones, Day is sole counsel to Gould as it was when Jones, Day was associated with Leydig, Voit and Mayer as local counsel to Gould. Although the term "local counsel" at one time may have meant less responsibility on the part of attorneys so designated, it is clear to the court, and should be to every lawyer who litigates in this country, that in the last ten years developments in the law have invalidated this prior meaning. The trend is, properly, away from the view that some counsel have only limited responsibility and represent a client in court in a limited capacity,

or that the local counsel is somewhat less the attorney for the client than is lead counsel.

In modern day practice, all counsel signing pleadings and appearing in a case are fully accountable to the court and their clients for the presentation of the case. The Federal Rules of Civil Procedure and the Local Rules for the Northern District of Ohio do not recognize any lawyers as less than full advocates for their clients. The law makes no distinction, as to the liability of lawyers signing pleadings, between those who are self-designated "lead" or "local" counsel. Federal Rule of Civil Procedure 11 places stringent obligations on all counsel signing pleadings, however designated. *See Hapaniewski v. City of Chicago Heights*, 684 F.Supp. 1011, 1016 (N.D.Ind.1988), *aff'd*, 883 F.2d 576 (7th Cir. 1989); *Coburn Optical Indus. Inc. v. Cilco, Inc.*, 610 F.Supp. 656, 660 (M.D.N.C. 1985); *Long v. Quantex Resources, Inc.*, 108 F.R.D. 416, 417 (S.D.N.Y.1985).

When Pechiney consented to Jones, Day representing Gould in the capacity of local counsel, it was consenting to the active and full participation by Jones, Day in this case as is expected of any attorneys involved in litigation and the record shows that even before Leydig, Voit and Mayer withdrew as counsel, Jones, Day was active in the prosecution of this case. Accordingly, Jones, Day's representation of Gould is embraced within the consent given by Pechiney and comports with the requirements of DR 5–105(C).

## B. IG Technologies Representation

■ The facts show that at the present time, Jones, Day represents both Gould, in this action against Pechiney, and IGT, Pechiney's subsidiary, in unrelated matters. Just as Gould and Pechiney being current clients of Jones, Day is a conflict of interest under DR 5–105, Gould and a subsidiary of Pechiney being current clients is an identical conflict. *See Pennwalt Corp. v.*

---

6. DR 5–105(C) also requires a finding that Jones, Day can adequately represent the interests of both Gould and Pechiney. No party contends that this would not be the case, and the court finds no evidence which indicates Jones, Day could not adequately represent both Gould here and Pechiney in its patent matters.

*Plough, Inc.,* 85 F.R.D. 264 (D.Del.1980). Since a conflict exists, Jones, Day may represent both Gould and IGT only if it receives the consent of Gould and Pechiney, IGT's parent company, to this dual representation.

■ Jones, Day has made no effort to obtain the consent of Gould or Pechiney, nor did it ever attempt to notify them of this conflict of interest. The 1987 consent which, the court has held, resolves the conflict as to the patent representation, cannot be used to imply consent to conflicting representations which arose years later. *See White Motor Corp. v. White Consol. Indus., Inc.,* No. 39295 (Ohio App., Cayahoga County, Jan. 10, 1980). Certainly it was impossible for Jones, Day to make a "full disclosure of the possible effect" of the conflict of interest, as required by DR 5–105(C), in May of 1987, when IGT was at that time not a Pechiney subsidiary.

■ Jones, Day has violated DR 5–105(C) by representing these conflicting interests without the consent of the clients involved. Having established that Jones, Day has violated DR 5–105(C), the court must now determine whether disqualification is appropriate in this case. As discussed above, disqualification is a drastic measure which should not be imposed unless absolutely necessary. Such motions are often made as tactical attempts to divest opposing parties of their counsel of choice. Subsequently, in resolving these motions, judicial scrutiny of the facts is required to prevent unjust results. *Smith v. Whatcott,* 757 F.2d 1098, 1099–1100 (10th Cir.1985); *J.P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring); *Kalmanovitz,* 610 F.Supp. at 1323. A delicate balance must be struck between two competing considerations: the prerogative of a party to proceed with counsel of its choice and the need to uphold ethical conduct in courts of law. *Panduit,* 744 F.2d at 1577; *Schiessle v. Stephens,* 717 F.2d 417, 420

(7th Cir.1983). Courts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposite effect is just as likely—encouragement of vexatious tactics, which increase public cynicism about the administration of justice. *Panduit,* 744 F.2d at 1576–77. In ruling on a motion to disqualify, and in considering the possible sanctions available to punish unethical conduct, courts must remember that the court is not the only agency policing lawyers' conduct. Other agencies are established to deal directly with that conduct, and there may be times when the sanctions of those agencies may be more appropriate than disqualification in the case before the court.

The explosion of merger activity by corporations during the past fifteen years, and the corresponding increase in the possibility that attorney conflicts of interest may arise unexpectedly, make it appropriate for a court to adopt a perspective about the disqualification of counsel in ongoing litigation that conforms to the problem. This means taking a less mechanical approach to the problem, balancing the various interests. The result is that the courts are less likely to order disqualification and more likely to use other, more tailored measures to protect the interests of the public and the parties.[7]

■ Applying a balanced perspective to the instant case, there are several important reasons why disqualification is not called for. First, there has been no demonstration that Pechiney has been prejudiced in any way by Jones, Day's representation of Gould. Confidential Pechiney information has not passed to Gould as a result of Jones, Day's representation of IGT, which is unrelated to the instant case. Second, disqualifying Jones, Day from representing Gould would not only cost Gould a great deal of time and money, in retaining new

**7.** As an example, the Second Circuit has taken what it calls a "restrained approach" to disqualification motions, granting them only where the ethical violation poses a significant risk of tainting ongoing proceedings. In all other cases, remedies for unethical conduct are left to the disciplinary machinery of the state and federal bar. *Bottaro v. Hatton Assoc.,* 680 F.2d 895, 896–97 (2d Cir.1982); *Glueck v. Johnathan Logan, Inc.,* 653 F.2d 746, 748 (2d Cir.1981).

counsel, it would significantly delay the progress of this case. This is a particularly weighty consideration, as this case involves a very complicated trade-secrets issue, with complex technology allegedly changing hands in the United States, Japan, and France. Finally, the conflict was created by Pechiney's acquisition of IGT several years after the instant case was commenced, not by any affirmative act of Jones, Day. In short, the integrity of the judicial process in this case has not been threatened by the conflict.

■ While the harsh measure of disqualification is not called for in this case, the conflict of interest must not endure. To permit this conflict to continue would shift the balance mentioned above too far away from the interests of upholding ethical standards of conduct in courts of law, and in the long run could be just as harmful as ordering the disqualification of Jones, Day. Under DR 5–105(C), Jones, Day can remain as counsel for both Gould and IGT only if Pechiney consents, and it is clear that no such consent will be given. Therefore, Jones, Day must discontinue its representation of either Gould or IGT. This choice, and its attendant ramifications, will be left to Jones, Day.

The court is aware of holdings in other cases to the effect that courts should not permit attorneys to avoid disqualification simply by dropping one client for another. *See Picker Int'l, Inc. v. Varian Assoc., Inc.*, 670 F.Supp. 1363, 1365–66 (N.D.Ohio 1987), *aff'd*, 869 F.2d 578 (Fed.Cir.1989), and authorities cited therein. The court believes, however, that the present case is distinguishable, and its facts justify an exception to this rule. These other decisions, in large part, are based on the premise that courts should not allow a law firm to profit from a conflict of interest which it created. This is the potential result when a law firm discards a less profitable relationship in contemplation of taking on a more profitable, conflicting representation, or when a merger between law firms creates a conflict and the firms delay calling attention to the conflict. In such cases, law firms will not be permitted to drop one client in favor

of another at the late date when it is called to the attention of the court.

Here, Jones, Day did not create the IGT conflict. Rather, the conflict was created by an acquisition of the client for legitimate business reasons. The improper action on Jones, Day's part was its failure to call this conflict to Pechiney's attention at the earlier point in time required by DR 5–105(C), and to either obtain Pechiney's consent or indicate that because of the conflict, it would withdraw from further representation of IGT. While not the situation in this case, it is clear that courts would not permit one party in a case to create a conflict which forces the disqualification or withdrawal of opposing counsel by buying up companies which opposing counsel represent. Nothing indicates that Pechiney has been prejudiced by Jones, Day's failure to notify. The court fails to see how the rules of ethics will be furthered by forcing Jones, Day to withdraw as counsel for Gould, or why the rules will not be served as well by giving Jones, Day a chance to choose how to extricate itself from a conflict it did not create, but to which it was unethically slow in responding.

The breach of the ethical obligation to notify clients of a conflict of interest, and either obtain consent or withdraw from representation is a serious matter. It should be addressed by an agency charged with enforcing the ethical standards for lawyers in Ohio. *Williams v. TWA*, 588 F.Supp. 1037, 1046, n. 4 (W.D.Mo.1984). Accordingly, as the appropriate remedy for the breach of the ethical standards, pointed out herein, the court has notified disciplinary counsel to the Supreme Court of Ohio of this ethical violation by Jones, Day. Further examination will be made of Jones, Day's actions by that authority.

*Conclusion*

Accordingly, defendants' motion to disqualify is DENIED. Jones, Day has thirty days, calculated from May 2, 1990, when the court made this ruling on the record in open court, in which to decide whether to withdraw as counsel for IGT or Gould. If it withdraws from representing Gould, the

court will take further action concerning the time frame in which Gould must retain new counsel and brief the new counsel on the issues in this case. If it withdraws from representing IGT, then Pechiney, IGT's parent company, becomes a former client of Jones, Day. To prevent any possible future acquisition of Pechiney's confidential information by the Jones, Day attorneys representing Gould, Jones, Day will be required to erect a chinese wall in accordance with *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222 (6th Cir.1988). Jones, Day should prepare a plan for such a chinese wall within ten days of its decision to withdraw as counsel for IGT, and submit this plan to Pechiney for comment, and to the court for approval.