**Kenneth R. SHELTON**

v.

**George HESS, et al.**

**Civ. A. No. H–82–1307.**

United States District Court,
S.D. Texas,
Houston Division.

Dec. 26, 1984.

David Lopez, Houston, Tex., for plaintiff.

Evelyn Tatum, Asst. Atty. Gen., Austin, Tex., for defendant.

## ORDER

CARL O. BUE, Jr., District Judge.

█ Pending before the Court is defendants' motion for sanctions in which defendants request that the Court disqualify plaintiff's counsel, Mr. David Lopez, from participating in this lawsuit. Briefly stated, defendants assert that they have been prejudiced by conferences had between defendant Miller and Mr. Lopez in which matters pertaining to this cause of action were discussed without informing or receiving the consent of defense counsel. Such conferences represent a violation of Canons 7 and 9 of the Texas Code of Professional Responsibility (TEX.REV.CIV.STAT. Title 14 App. Art. 12, § 8).[1] Plaintiff's counsel, while admitting that a conference between himself and Mr. Miller did occur, emphatically denies that the communication was "on the subject of the representation" and affirmatively asserts that the conference, held only after detailed safeguards were undertaken to insure that Mr. Miller understood the potential for prejudice, concerned Mr. Miller's own lawsuit against the University of Houston, defendant Hess, and others. After careful consideration of the memoranda, the entire record in this cause and argument of counsel as well as the relevant law, the Court is of the opinion that defendants' motion should be granted for the reasons discussed below.

### Background

Plaintiff, Kenneth R. Shelton, a former employee of the University of Houston, brought this action in May of 1982, alleging, among other things, that defendants violated his civil rights by terminating him from his employment as a peace officer of the University campus police. It was his contention that in the latter part of 1981, the activities of the campus police appeared to be directed in many respects toward political, rather than law enforcement, purposes, as for example by utilizing criminal charges, or the threat of such charges, to

---

1. Canon 7: A Lawyer Should Represent a Client Zealously Within the Bounds of the Law
DR 7-104: Communicating With One of Adverse Interest.
(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
Canon 9: A Lawyer Should Avoid Even the Appearance of Professional Impropriety

obtain the resignation of specific faculty and staff members of the University. He contended, further, that when he reported an awareness of such activities to his supervisors, the defendants retaliated against him by *inter alia* denying him participation in certain desired staff development programs, by forcing him to resign his position at the University, by damaging his reputation, and by threatening him with serious bodily injury.[2] In his prayer for relief, Mr. Shelton sought compensatory damages in the amount of $150,000.00 from each of the individually named defendants, punitive damages in the amount of $50,000.00 as to defendants Hess, Munitz, and Osborne, $200,000.00 as to defendant Miller, and $150,000.00 as to defendant Stevens, as well as declaratory and injunctive relief.

On February 27, 1984, some two years into the development of this lawsuit, Mr. Lopez conferred with defendant Miller, Assistant Chief of the University of Houston Campus Police, without seeking prior consent from defendants' counsel, Ms. Evelyn Tatum. Although the circumstances surrounding the planning of that conference as well as the subject matter discussed during the conference are vigorously contested by the parties, it is admitted that such conference did occur. On April 2, 1984, less than one week after the conference was held, plaintiff's motion for leave to file its second amended complaint, dropping the punitive damages claim as to defendant Miller, and adding University counsel, Pat Bailey as a party-defendant, was filed. The complaint was amended also so as to modify the cause of action as to defendant Miller in the following manner: "The acts of Defendant Miller seeking to have the Plaintiff voluntarily waive and abandon his rights to substantive and procedural due process were brought about by the specific direction and suggestion of Defendant Bailey in an effort to obstruct the proper administration of justice and to conceal the improper activities of the University of Houston Campus Police Department."

(Plaintiff's Second Amended Complaint at Paragraph 35A).

On May 18, 1984, defendant Miller informed Ms. Tatum by letter that he no longer wanted the Attorney General's office to represent him "in the Shelton matter." That communication was followed by a letter from Mr. Lopez to Ms. Tatum dated May 29, 1984, in which Mr. Lopez stated:

> It is my understanding that defendant John L. Miller has informed you that he no longer wishes to be represented by the Attorney General's office. At your earliest convenience, I would appreciate your filing a formal withdrawal with the court. Please inform me if in behalf of the other defendants you have any objection to execution of a stipulation for dismissal of Mr. Miller in accordance with the provisions of Rule 41(a), Federal Rules of Civil Procedure.

On July 30, 1984, defendant Miller, "with the help of Mr. Lopez," (Testimony of Mr. Miller) filed his notice of substitution of counsel, setting forth the following:

> Now comes John Miller ... acting *pro se*, and gives notice to the Court ... of the substitution of himself, *pro se*, as attorney in charge. The undersigned Defendant has informed the attorney heretofore appearing in his behalf, Evelyn S. Tatum ... that he does not wish to be represented by her or any other attorney in the office of the attorney general, and that he wishes to appear in this action *pro se*. The undersigned Defendant has made specific demand upon Ms. Tatum to withdraw as his attorney, and Ms. Tatum has failed and refused to do so.

Approximately one week later, Mr. Lopez notified Ms. Tatum that he intended to discuss with Mr. Miller settlement of plaintiff's claims against him and that it was possible that plaintiff would be willing to dismiss Miller from the case upon stipula-

---

**2.** Although Mr. Shelton was reinstated to his position by the University of Houston grievance committee in May of 1983, he was again dis-charged; such discharge is presently the subject of another grievance within the University grievance process.

tion. (Letter to Ms. Tatum dated August 8, 1984)

At a conference held in Chambers on August 20, 1984, the Court heard counsels' argument with respect to defendants' motion for sanctions. Defendant Miller, also present at the conference, and Ms. Tatum both testified under oath as to the facts surrounding the meeting between Mr. Lopez and Mr. Miller. In addition, counsel stipulated that "if called to give sworn testimony," Mr. Lopez "would testify to the same effect as the statement of facts as my memorandum." The facts set out in plaintiff's memorandum which are of particular consequence to this motion include the following:

Defendant Hess, through officers and members of his department, has engaged in a far ranging effort to utilize his power as Chief of the University of Houston Police Department to avoid responsibility for the actions alleged in this lawsuit. These actions have included harassment and disciplinary actions against officers in the department believed by Defendant Hess to have sympathy for the Plaintiff ...

In January, 1984, one of the officers being subjected to harassment and disciplinary actions by Defendant Hess because of the relationship of that officer to this case apparently contacted Defendant Miller.

In their discussion, Defendant Miller told that officer that he felt that Defendant Hess had similarly acted against him, Defendant Miller, because Defendant Hess perceived that Defendant Miller liked and was sympathetic to the Plaintiff.

Defendant Miller expressed to that officer a desire to communicate with the Plaintiff and also to secure the services of Plaintiff's counsel in his own lawsuit against Defendant Hess ...

... Plaintiff stated that on the basis of information he had received from other officers, and his conversation with Defendant Miller, that he had come to believe that Defendant Miller at all times had had sympathy for him, the Plaintiff,

but that Defendant Miller had been directed to act against the Plaintiff by Defendant Hess and other officials of the University of Houston ...

The conference related to Mr. Miller's own case. That case involves his separation from employment with the University of Houston Police Department and what he considers to be a violation of his rights. The conference did not involve any discussion of this case, other than to the extent that Defendant Miller attributes the actions against him as being related to a perceived sympathy for the Plaintiff ...

(Plaintiff's Memorandum in Opposition to Motion for Sanctions at pages 4, 5, 6, and 8.) After hearing argument of counsel as well as testimony presented, the Court, seeking to maintain the status quo, denied defendants' counsel's request to withdraw from the representation of Mr. Miller and took under advisement defendants' motion for sanctions.

On October 15, 1984, defendant Miller, by and through his attorney of record, Mr. Lopez, filed his original complaint against, among others, the University of Houston; George Hess, Chief of the University of Houston Campus Police; Barry Munitz, Chancellor; George Osborne, Interim Vice Chancellor and Dean of Students; and Pat Bailey, University Counsel. Mr. Miller asserted *inter alia* the following:

Under the administration of George Hess, the Department has been utilized for personal or political purposes in derogation of the rights of individuals who have been subjected to unlawful surveillance and detention, unwarranted charges, and official oppression.

He contended further that he had made consistent efforts to persuade Mr. Hess to correct the police department's policies and practices and that by so doing caused defendants to retaliate against him and violate his civil rights by falsely accusing him of improper personal conduct and by constructively discharging him from his employment at the University of Houston. Mr. Miller contended that the acts of which he complained occurred on or about October 19, 1982.

*The Law*

Defendants argue that plaintiff's counsel should be disqualified from further representation of plaintiff in this cause of action because of a violation of DR 7–104. They contend that such a violation not only prejudices the defendants' ability to defend themselves, but represents a violation of Canon 9.

The Fifth Circuit, aware of the ever-increasing attempts to disqualify counsel as purely a tactical manuever, has consistently advised that to be disqualified pursuant to Canon 9, a two-prong test must be satisfied. First, while there need be no proof of actual wrongdoing, moving counsel must establish "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." And second, moving counsel must show that "the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." Included in the Fifth Circuit's analysis is a balancing of prejudices to the parties involved. *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976); *Doe v. A Corporation,* 709 F.2d 1043 (5th Cir.1983); *reh'g and reh'g en banc denied,* 717 F.2d 1399 (5th Cir.1983); *see also Gibbs v. Paluk,* 742 F.2d 181 (5th Cir.1984).

The Eighth Circuit has held that "[i]n determining whether an attorney should be disqualified from participating in a lawsuit because of an alleged violation of DR 7–104, three competing interests must be balanced: (1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice." *Meat Price Investigators Ass'n. v. Spencer Foods,* 572 F.2d 163, 165 (8th Cir.1978). Using either the two-prong test of the Fifth Circuit in *Woods* or the three-prong test of the Eighth Circuit in *Spencer Foods,* it is clear to this Court that the scales of justice tip in favor of defendants.

In focusing upon the first prong of the *Woods* test, whether there has been a showing that there is a reasonable possibility that some specific impropriety has, in fact, or will, in fact, occur, this Court has little difficulty in discerning that the conferences had between Mr. Miller and Mr. Lopez are strongly suggestive of a DR 7–104 violation and readily represent the "specific impropriety" plaintiff's counsel is in danger of violating or has violated. However, plaintiff urges vigorously that a violation of DR 7–104 has not occurred as a result of the communications had between Mr. Lopez and Mr. Miller because such conferences were not "on the subject of the representation." Nonetheless, Mr. Lopez admitted in his memorandum to the Court that Mr. Miller, seeking Mr. Lopez to represent him in his own cause of action against the University of Houston and defendant Hess, attributed "the actions against him as being related to a perceived sympathy for plaintiff." Moreover, in his complaint against the defendants, Mr. Miller contends that "under the administration of George Hess, the [University Police] Department has been utilized for personal or political purposes ...". This allegation is strikingly similar to plaintiff's claim in the lawsuit *sub judice* in which he asserts that "[t]oward the latter part of 1981, the Plaintiff became increasingly aware that the activities of the campus police appeared to be directed in many respects toward political, rather than law enforcement, purposes ..." (Plaintiff's Second Amended Complaint, Paragraph 18).

█ Further, both plaintiff and Mr. Miller have been employed in positions in the University of Houston Campus Police Department; both contend that they were wrongfully discharged during the latter parts of 1981 and 1982; and both contend that defendants University of Houston, George Hess, Gerald Osborne, Rayford Stephens, Barry Munitz, and Pat Bailey were responsible for the alleged wrongful acts occurring against them. In the opinion of this Court these similarities seem inextricably intertwined with Mr. Miller's assertions that the actions against him by defendant Hess are a result of a "perceived sympathy for plaintiff." Finding that the matters discussed were sufficiently "on the

subject of the representation," the Court concludes that the first prong of the test as set out in *Woods* has been satisfied.

 In applying the second prong of the *Woods* test to the instant case, the Court must determine whether the likelihood of public suspicion outweighs the social interest in Mr. Lopez's continued representation of plaintiff. Within this prong lies a weighing of the relative harm to the plaintiff and remaining co-defendants. *Woods,* 537 F.2d at 813, 819; *Gibbs v. Paluk,* 742 F.2d at 181; *Spencer Foods,* 572 F.2d at 165; *W.T. Grant Co. v. Haines,* 531 F.2d 671 (2nd Cir.1976). In this case, the likelihood that the image of the legal profession will be somehow undermined or tarnished by the continuance of the relationship between Mr. Lopez and Mr. Miller and the likelihood that the remaining co-defendants will be severely hampered in their defense outweighs the right of a civil litigant to counsel of his choice. As previously noted, Mr. Lopez has represented Mr. Shelton since May of 1982. Accordingly, the Court recognizes that as a result of this ruling, plaintiff will suffer abrupt deprivation of his counsel as well as added expense, and the litigation will be disrupted while he secures new counsel. However, the Court also recognizes that if Mr. Lopez is allowed to continue to represent both plaintiff and co-defendant, Mr. Miller, in their respective lawsuits arising out of difficulties experienced within the University of Houston police department, the remaining co-defendants will likely suffer irreparable prejudice to their ability to defend.

For example, Mr. Miller has sought the discharge of the Attorney General's Office as to his representation in the pending suit. Such a discharge is disruptive to the defense of Mr. Miller's co-defendants in this action in that it produces a possible conflict of interest as between Ms. Tatum and Mr. Miller as the action proceeds since the State of Texas can theoretically be held liable for damages for the acts or omissions of state employees. *See* TEX.REV.CIV. STAT.ANN. arts. 6252–26 (Vernon Supp. 1984). Further, because Mr. Miller holds the attorney-client privilege as to the communications between himself and Ms. Ta-

tum, the defense of this action as to the other defendants may become unfairly and unjustly complicated. Finally, because Mr. Miller and Mr. Lopez have established an ongoing relationship in a lawsuit sharing significant facts and legal issues with the one at bar, there exists a high risk that disclosures of confidential information relating to the case *sub judice* will pass from Mr. Miller to Mr. Lopez.

Finally, as to public policy considerations, the likelihood of public suspicion in this case is readily apparent by the following admitted facts. Plaintiff has had repeated conversations with defendant Miller regarding this lawsuit, Mr. Lopez has established a continuing relationship with defendant Miller as counsel in Mr. Miller's own lawsuit against the University, plaintiff has sought to dismiss defendant Miller out of this lawsuit or at least reduce the damages as to Mr. Miller subsequent to a conference between Mr. Lopez and Mr. Miller, and Mr. Miller has sought to discharge the Attorney General's Office as counsel for him in the lawsuit at bar. In this Court's view, such a scenario of facts occurring within a relatively short time frame, rises to a level at which the public might be suspicious, and rightfully so, of the behavior of plaintiff's counsel, even though he may actually have done no wrong. As the court stated in *Woods:*

> The requirement that a lawyer avoid even the appearance of impropriety reflects the bar's concern that some conduct which is in fact ethical may appear to the layman as unethical and thereby could erode public confidence in the judicial system or the legal profession.

537 F.2d at 813.

### Conclusion

The law is clear in this Circuit that a District Court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it. *Woods,* 537 F.2d at 810; *Sanders v. Russell,* 401 F.2d 241, 246 (5th Cir.1968). However, fully cognizant that the business of the Court is to dispose of litigation as well as to preserve a reasonable balance between the need to ensure ethical conduct of

attorneys appearing before it and other social interests, this Court does not lightly separate plaintiff from the counsel of his choice. Nonetheless, in light of the totality of the circumstances, the Court has little choice but to conclude that the defendants have been and will be unfairly prejudiced by plaintiff's and plaintiff's counsel's actions and that the ends of justice are most appropriately served by disqualifying Mr. Lopez from participating further in this lawsuit.

The fact that defendant Miller may have initiated the connection between himself and Mr. Lopez does not militate against the Court's conclusion; nor does the fact that plaintiff not only participated in but encouraged the contacts between himself, Mr. Lopez and Mr. Miller. In this Court's view, Mr. Lopez, in order to avoid the appearance of impropriety, should have avoided any form of direct affiliation with defendant Miller. Having failed to do so, defendants have been unfairly prejudiced. Accordingly, defendants' motion for sanctions is granted and Attorney Lopez is hereby disqualified from representation of the plaintiff in this cause.