14 P.3d 1266 (2000)
Florence BROWN and David Brown, Petitioners,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, In and For the COUNTY OF CLARK, and the Honorable James A. Brennan, Senior Judge, Respondents, and
John S. Thalgott, M.D., Real Party in Interest.
No. 34501.
Supreme Court of Nevada.
December 19, 2000.
*1267 Thomas C. Mehesan, Las Vegas; Lionel Sawyer & Collins and Dennis L. Kennedy and David N. Frederick, Las Vegas; Gillock Markley & Killebrew and Julie A. Mersch, Las Vegas, for Petitioners.
Pico & Mitchell and Rebecca L. Mastrangelo and Jill M. Chase, Las Vegas, for Real Party in Interest.
BEFORE THE COURT EN BANC.

OPINION
ROSE, C.J.
This writ petition presents us with the question whether a party's counsel of choice should be disqualified based on his close association with a law firm disqualified under SCR 160 for an imputed conflict of interest.[1] We conclude that disqualification is not warranted absent proof of a reasonable probability that counsel actually acquired privileged, confidential information, and we therefore grant the petition.
Petitioner Florence Brown sustained life-threatening injuries in an automobile accident *1268 in August 1992. She was hospitalized and underwent surgery by real party in interest, Dr. John Thalgott, and Dr. Jeffrey Zapinsky.[2] In late 1993 or early 1994, Mr. and Mrs. Brown hired attorney Thomas C. Mehesan to represent them.
Mehesan negotiated a settlement of the automobile accident case; however, he felt compelled to withdraw from representation of the Browns when they and medical care lien holders both claimed the settlement proceeds that had been deposited in Mehesan's trust account. Mehesan referred the Browns to the law firm of Barker, Gillock, Koning & Brown (later Gillock, Koning, Markley & Killebrew; now Gillock, Markley & Killebrew), which agreed to represent the Browns in a medical malpractice action.
The Gillock firm commenced proceedings before the Medical-Legal Screening Panel (now the Medical-Dental Screening Panel) against Dr. Thalgott. Dr. Thalgott was represented by attorney Neil G. Galatz, who had previously represented the doctor in other matters. Galatz was assisted in his representation of Dr. Thalgott by his paralegal and personal secretary, Lucrezia Smith, who had worked for Galatz since July 1987. The screening panel issued a finding of no reasonable probability of medical malpractice by Dr. Thalgott in February 1996, and the Gillock firm filed a medical malpractice complaint on behalf of the Browns in March 1996.
In September 1996 Smith left the Galatz law firm to work for the law firm of Broening, Oberg, Woods, Wilson & Cass; Smith then left that firm in March 1997 to work for the law firm of Kummer, Kampfer, Bonner & Renshaw. Meanwhile, in February 1997, James F. Pico of the Pico & Mitchell law firm was substituted as Dr. Thalgott's attorney in place of Galatz.
Mehesan resolved his potential conflict of interest with the Browns, and in April 1997 the Browns formally associated Mehesan with the Gillock firm as their co-counsel. Firm partner Gerald Gillock was designated lead counsel for trial; however, Mehesan was extensively involved in preparing for trial, and attended or took all major depositions in the case.
In October 1997 this court issued its opinion in Ciaffone v. District Court, 113 Nev. 1165, 945 P.2d 950 (1997), which rejected a challenge by the Gillock firm to its disqualification in an unrelated wrongful death action based on its employment of a legal secretary who had previously worked on the wrongful death case for opposing counsel.
In May 1998 Gillock hired Smith as his personal secretary. Gillock screened Smith from the Brown case, but did not notify Dr. Thalgott or obtain a waiver from him.
Also in May 1998, the district court scheduled a jury trial to begin in the underlying case on March 9, 1999. In February 1999 Dr. Thalgott moved to continue the trial. The district court denied the motion, but subsequently reset the trial for May 12, 1999, to accommodate the court's schedule.
On May 7, 1999, Dr. Thalgott filed a "Motion to Disqualify Plaintiffs' Attorneys," based on Ciaffone and Smith's employment with the Gillock firm. In his supporting affidavit, Dr. Thalgott swore he first became aware that Smith had become Gillock's personal secretary on May 5, 1999, while preparing for trial. In their opposition, petitioners conceded Ciaffone applied, but argued that disqualification was not warranted because Dr. Thalgott's attorney knew that Smith had formerly worked for Galatz, and had known for at least two or three months that Smith was now working for Gillock.
Dr. Thalgott's attorney acknowledged these facts at the May 10, 1999, hearing on the motion, but argued his knowledge was irrelevant under the circumstances: he had not known the extent of Smith's involvement in Dr. Thalgott's cases, and Dr. Thalgott had not known that Smith had changed sides.
*1269 Gillock then offered to withdraw himself and his firm from representation of the Browns, so that the case could proceed to trial as scheduled with Mehesan taking over as trial counsel. Gillock and Mehesan both indicated that Mehesan was ready to try the case. Dr. Thalgott's attorney argued Mehesan should be disqualified as well because of his close association with Gillock. Notwithstanding repeated assertions by Gillock and Mehesan that no confidential information had actually passed from Smith to either of them, or from Gillock to Mehesan, the court granted the motion and disqualified both the Gillock firm and co-counsel Mehesan.
Petitioners specially retained the law firm of Lionel, Sawyer & Collins and moved for reconsideration. The parties fully briefed and argued the issue whether Mehesan was subject to imputed disqualification under SCR 160, given the fact that he was not a member of the disqualified firm.
In its order denying reconsideration, the district court clarified that it did not believe that Ciaffone mandated automatic disqualification of co-counsel based on a double imputation of confidential knowledge. The court declined to specify any particular test that should be applied in the co-counsel situation generally, and focused instead on the specific facts before it. Accepting the truthfulness of the affidavits indicating there was no actual transfer of privileged information, the court nevertheless decided the close working relationship between Gillock and Mehesan required Mehesan's disqualification to avoid any appearance of impropriety. This writ petition followed.
It is not disputed that Smith acquired privileged, confidential information from and relating to Dr. Thalgott when she worked for Galatz. Smith's conflict of interest was imputed to the Gillock firm, which was disqualified under SCR 160(2) and Ciaffone.
SCR 160(2) prohibits lawyer screening and imputes a lawyer's disqualification to the lawyer's firm.[3] In Ciaffone, this court held that nonlawyer employees are subject to the same rules governing imputed disqualification because to hold otherwise would grant less protection to privileged, confidential information acquired by a lawyer's employees than to that acquired by the lawyer. Ciaffone, 113 Nev. at 1168, 945 P.2d at 953.
The district court properly declined to interpret Ciaffone as mandating automatic disqualification of co-counsel based on a double imputation of Smith's knowledge. The question is whether Ciaffone's rationale supports the imputed disqualification of co-counsel Mehesan for an appearance of impropriety without evidence of a reasonable probability that there was a transfer of privileged, confidential information.[4] We conclude it does not.
District courts are responsible for controlling the conduct of attorneys practicing before them, and have broad discretion in determining whether disqualification is required in a particular case. See Robbins v. Gillock, 109 Nev. 1015, 1018, 862 P.2d 1195, 1197 (1993); Cronin v. District Court, 105 Nev. 635, 640, 781 P.2d 1150, 1153 (1989). Courts deciding attorney disqualification motions are faced with the delicate and sometimes *1270 difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice. See Hull v. Celanese Corp., 513 F.2d 568, 570 (2d Cir. 1975). While doubts should generally be resolved in favor of disqualification, see Cronin at 640, 781 P.2d at 1153; Hull, 513 F.2d at 571, parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay. See Flo-Con Systems, Inc. v. Servsteel, Inc., 759 F.Supp. 456, 458 (N.D.Ind.1990).
When considering whether to disqualify counsel, the district court must balance the prejudices that will inure to the parties as a result of its decision. Cronin, 105 Nev. at 640, 781 P.2d at 1153. To prevail on a motion to disqualify opposing counsel, the moving party must first establish "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur," and then must also establish that "the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." Id. at 641, 781 P.2d at 1153 (quoting Shelton v. Hess, 599 F.Supp. 905, 909 (S.D.Tex.1984)).
Here, Smith's employment at the Gillock firm and Mehesan's close working association with Gillock constituted evidence of a reasonable possibility that Gillock acquired confidential information from Smith and shared it with Mehesan. However, as required by Cronin, the Browns must also establish a "likelihood of public suspicion or obloquy," which is to then be weighed against the social interests served by Mehesan's continued participation. This likelihood can be established by evidence showing not just the possibility, but a reasonable probability, that the challenged attorney actually received privileged or confidential information. Having reviewed the evidence presented to the district court, we conclude that the equities do not favor severing the attorney-client relationship between Mehesan and the Browns.
First, Smith, Gillock and Mehesan submitted affidavits rebutting the evidence that Mehesan could have acquired privileged, confidential information about Dr. Thalgott, and the district court accepted the truthfulness of these affidavits. Thus, there was no evidence that Mehesan actually or even probably acquired disqualifying information.
Second, absent proof of at least a reasonable probability that Mehesan actually acquired privileged, confidential information, Dr. Thalgott failed to establish that he would be prejudiced by Mehesan's continued participation. In contrast, petitioners would be severely prejudiced by the disqualification of their counsel of choice, as it would be very difficult for new counsel to economically and timely move the case to trial.
We are mindful of the quandary the district court faced in this case: allowing disqualification of co-counsel without requiring proof that confidences were shared tends toward automatic disqualification, based on re-imputation of an imputed conflict, while requiring such proof introduces all the problems associated with screening that are identified in Ciaffone (difficulty litigating the issue, uncertainty about the effectiveness of screening, the monetary incentive involved in breaching the screen, the fear of disclosing privileged information in the course of proving an effective screen, and the possibility of accidental disclosures). We conclude that requiring proof of a reasonable probability that counsel actually acquired privileged, confidential information strikes the appropriate balance in disqualification cases such as this.
In light of the fact that there was no reasonable probability that Mehesan acquired confidential information, and the fact that Dr. Thalgott would not be prejudiced by Mehesan's continued representation of the Browns while the Browns would be greatly prejudiced by his removal, Mehesan's disqualification was not warranted under Cronin. Consequently, we conclude the district court manifestly abused its discretion by disqualifying *1271 Mehesan as counsel for petitioners under these circumstances.
A writ of mandamus is properly used to challenge a district court's order disqualifying counsel. See Cronin, 105 Nev. at 639 n. 4, 781 P.2d at 1152 n. 4. Based on our conclusion that the district court manifestly abused its discretion by disqualifying Mehesan as petitioners' counsel, we grant this petition.[5]See Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). The clerk of this court shall issue a writ of mandamus compelling the district court to vacate its order disqualifying Mehesan as counsel for petitioners.[6]
MAUPIN, J., and ADAMS, District Judge, concur. BECKER, J., concurring.
I concur in the result only.
AGOSTI, J., with whom SHEARING and LEAVITT, JJ., agree, dissenting.
The decision to disqualify counsel is within the broad and sound discretion of the district court. Absent a showing of abuse of discretion, the district court's determination should not be disturbed. See Cronin v. District Court, 105 Nev. 635, 640, 781 P.2d 1150, 1153 (1989). The reason for leaving questions of attorney disqualification to the district court is that the primary responsibility for controlling lawyers' conduct in the district court lies with that court, not with an appellate court. Unified Sewerage Agency of Washington County, Or. v. Jelco Inc., 646 F.2d 1339, 1351 (9th Cir.1981). In my opinion, the district court properly exercised its discretion in disqualifying the co-counsel from further representation of the petitioners. Therefore, I dissent.
Attorney Neil Galatz had represented John S. Thalgott, M.D., at proceedings initiated against Dr. Thalgott by Florence and David Brown before what was at the time known as the medical-legal screening panel. Galatz's paralegal, Lucrezia Smith, directly assisted Galatz in that representation. She subsequently accepted employment with the Gillock firm. There is no question that, while employed by Galatz, Smith acquired confidential information[1] pertaining to Dr. Thalgott's defense against the Browns' action. It is clear that Smith's employment at the Gillock firm requires disqualification of the Gillock firm from representation of the Browns in their medical malpractice action against Dr. Thalgott. See SCR 160(2); SCR 187; Ciaffone v. District Court, 113 Nev. 1165, 945 P.2d 950 (1997). However, the district court also disqualified co-counsel, Thomas C. Mehesan, along with the Gillock firm.
In Ciaffone, we rejected screening as a means of protecting the confidential attorney-client relationship from a non-lawyer's breach of confidentiality. 113 Nev. at 1168, 945 P.2d at 952-53. Instead, we adopted a per se rule of disqualification, imputing the non-lawyer employee's knowledge to the attorney.
I agree with the majority in rejecting a per se rule of double disqualification of co-counsel simply because a conflict is imputed first to the attorney whose employee obtained confidential information during prior employment. I believe that co-counsel may be sufficiently distanced from the imputed conflict that disqualification may not be necessary. However, I disagree with the test applied by *1272 the majority to determine that disqualification is not warranted in this case.
The majority has determined that no conflict of interest may be imputed to Mehesan because Dr. Thalgott cannot prove by a reasonable probability that Mehesan actually acquired confidential information originating from Smith and because the "equities" do not favor disqualification. This novel test imposes an impossible burden upon Dr. Thalgott.
This court previously applied an apparently slightly, but actually significantly, different test for disqualification in Cronin. Cronin did not involve an allegation that disqualification was warranted for breach of client confidences or for imputed disqualification based upon a member of the firm actually possessing the adverse party's confidentially obtained information. Cronin involved violations by counsel of SCR 182, which prohibits an attorney from communicating with an adverse party who is represented by an attorney without the consent of the attorney. Citing Shelton v. Hess, 599 F.Supp. 905 (S.D.Tex.1984), we adopted a two-pronged test in Cronin. First, "to prevail on a motion to disqualify opposing counsel for an alleged ethical violation, the moving party must first establish `at least a reasonable possibility that some specifically identifiable impropriety did in fact occur.'" 105 Nev. at 641, 781 P.2d at 1153 (emphasis added) (quoting Shelton, 599 F.Supp. at 909). Second, the moving party must also establish that "`the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." ' Id. This test is the one utilized by the United States Court of Appeals for the Fifth Circuit to determine disqualification based upon the appearance of impropriety. See Woods v. Covington County Bank, 537 F.2d 804, 813 (5th Cir.1976). The question posed in this case is not one concerning the appearance of impropriety.
Both Shelton and Cronin are inapposite to the question of an imputed disqualification of co-counsel as both cases dealt with an attorney's direct communications with the adverse party's managing employees without the consent of counsel for the adverse party. In Shelton, two tests were cited with approval. The two-pronged test that was adopted in Cronin was applied in Shelton because, as mentioned in Shelton, the moving party had specifically alleged that the communications violated Canon 9 of the Texas Code of Professional Responsibility, which provides that a lawyer should avoid even the appearance of impropriety. Shelton also applied a threepart balancing test to resolve the specific question of disqualification based upon an allegation of a breach of DR 7-104 of Canon 7 of the Texas Code of Professional Responsibility which forbids communication with an adverse party without the consent of the party's attorney. That test was originally articulated in Meat Price Investigators Association v. Spencer Foods, Inc., 572 F.2d 163 (8th Cir.1978).[2] That test identifies three competing interests that must be balanced: "(1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice." Id. at 165.
Setting aside for a moment the majority's modification of the two-pronged test from a reasonable possibility to a reasonable probability, the Cronin test makes sense in situations where, as in Shelton, an attorney's speaking to an adverse party's managerial employees without counsel's knowledge or consent raises legitimate questions concerning *1273 the appearance of impropriety. It makes less sense where, as here, the one asserting the conflict actually provided confidential information to his counsel and the information was shared with an employee who later took up employment with an attorney who was adversely involved in litigation over a substantially related matter. The client imparted the confidences without ever expecting that the attorney or employee would join the "enemy camp." In both Shelton and Cronin, the employees knew they were speaking to an attorney who represented interests adverse to their employer's.
Of greater concern still, the majority has elevated the burden imposed in the first prong of the Cronin test from proof of a reasonable possibility to a reasonable probability and has offered no justification in logic or legal authority for the enhancement.
The majority's test requires that Dr. Thalgott prove by a reasonableprobability that Smith actually shared confidential information with Gillock[3] and with Mehesan directly or that the information was provided to Mehesan through Gillock. As noted in In re American Home Products Corp., 985 S.W.2d 68, 74 (Tex.1998), placing the burden of proof on the moving party forces the party to reveal the very confidences sought to be protected.[4]
Dr. Thalgott can never meet the first prong of the majority's test, establishing by a reasonable probability that some specifically identifiable impropriety did in fact occur, without violating the very confidences sought to be protected. In addition, this proof requirement compels a great expenditure of time and resources. Dr. Thalgott will either have to engage in discovery on the issue of what Smith learned through her employment with Galatz or be placed in a position of disclosing the confidences himself in order to establish that the Browns' anticipated strategy or tactics take this information into account.
The United States Court of Appeals for the Third Circuit rejected a per se rule disqualifying all co-counsel if one co-counsel is disqualified for ethical reasons in Akerly v. Red Barn System, Inc., 551 F.2d 539 (3d Cir.1977). The court stated, "Instead, we adhere to ... a careful sifting of all of the facts and circumstances." Id. at 543. Akerly was one of many factually similar cases discussed in Essex Chemical Corp. v. Hartford Accident & Indemnity Co., 993 F.Supp. 241, 247 (D.N.J.1998). Essex considered the disqualification of all defense counsel who had participated in a "joint defense agreement" with an attorney who was disqualified for imputed knowledge arising out of a member of the firm's prior representation of Essex. The Essex court also rejected a per se rule of double disqualification based upon imputed knowledge. In Essex, like the case at hand, the disqualified attorney was not the member or employee of the firm who had previously represented Essex, just as Gillock had not previously represented Dr. Thalgott. The conflict arose because of another member of the firm's prior representation of Essex, just as Smith's prior employment with Galatz caused a conflict. The Essex court gleaned a two-part test from the cases it analyzed. It stated the need for
a careful review of the facts to determine: (1) what, if any, confidences were actually shared between the tainted attorney and the attorney sought to be disqualified, where the tainted attorney did not represent the former client in question and (2) the nature of the relationship between the tainted attorney and the attorney sought to be disqualified.
Id. at 251-52. However, the Essex court did not state with what degree of probability the trial court must find that confidences were *1274 shared. Given the impossibility of establishing such a thing by aprobability, I advocate the reasonable possibility standard articulated in Shelton and Cronin.
I believe the moving party should establish facts from which it may be concluded directly or by inference that confidential disclosure is a reasonablepossibility. The second part of the majority's test is unnecessary for three reasons. First, that prong is designed to address avoidance of the appearance of impropriety. Model Canon 9, which addresses avoidance of the appearance of impropriety, was never adopted in Nevada. Second, I can think of no reason to require such considerations when disqualification is sought because a reasonable possibility exists that client confidences have actually been breached. These considerations are not required in any other jurisdiction when the question is whether client confidences might have been disclosed, as far as I can discern. Third, I believe we must provide greater protection for the sanctity of confidences revealed within the attorney-client relationship than for the opposing party's desire to retain the attorney of his or her choice.
The majority would also require Dr. Thalgott to demonstrate prejudice if disqualification is not granted. In Cronin, we did not require a party to prove prejudice. Cronin requires, as acknowledged by the majority, that the district court balance "the prejudices that will inure" to the parties as a result of its decision. 105 Nev. at 640, 781 P.2d at 1153. This is an important distinction since Dr. Thalgott will not know until he has proceeded to trial against co-counsel whether he has been prejudiced or not. I submit the court must define "the prejudices that will inure" to Dr. Thalgott as the threat, rather than the certainty, that his confidences will be used by his adversary to gain an advantage. The district court needs to assess the reality of that threat. Rather than balancing "the prejudices that will inure," I prefer the Essex court's approach, which is to balance the hardships. 993 F.Supp. at 254. This is certainly the meaning intended by the language in Cronin. I believe the majority has tortured Cronin's language regarding prejudices and created a new and unwarranted requirement. The Essex court stated that "the court must balance the hardships to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed." Id. at 254; see Carlyle Towers Condom. Ass'n, Inc. v. Crossland Sav., FSB, 944 F.Supp. 341, 345 (D.N.J.1996) ("[A] delicate balance must be maintained between `the sacrosanct privacy of the attorney-client relationship ... and the prerogative of a party to proceed with counsel of its choice.'" (quoting Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir.1983))).
The majority has conceded, as it must, a reasonable possibility that disclosure was made. Indeed, the real possibility that disclosure occurred is evident from the very close and unique relationship Mehesan bore to the Gillock firm in the context of this case. Applying the "careful sifting of all of the facts and circumstances" requirement of Akerly, 551 F.2d at 543, and considering "the nature of the relationship between the tainted attorney and the attorney sought to be disqualified" as required in Essex, 993 F.Supp. at 252, I note that the district court had the following facts before it.
Mehesan ordinarily worked out of his home. While representing the Browns in their medical malpractice action against Dr. Thalgott, Mehesan variously used an empty office or a conference room at the Gillock firm to review medical records and discovery documents, to prepare for court appearances, to take depositions and to meet with defense counsel. Mehesan utilized the services of a Gillock firm secretary and a Gillock firm paralegal. He consulted with Julie Mersch, a Gillock firm associate involved in the Browns' action against Dr. Thalgott, and worked directly with Gillock on trial preparation.
Although the district court based its decision on the need to avoid the appearance of impropriety, it did not abuse its discretion in disqualifying Mehesan. A careful review of *1275 the district court's order reveals that the district court performed exactly the kind of analysis advocated by Essex and the first prong of Shelton and Cronin. The court emphasized that it rejected a per se double imputation rule. It stated:
This court does not rule on the particular test that should be applied in the cocounsel situation. An examination of the relationship between co-counsels in this case will suffice.
Mr. Mehesan worked closely with members of Mr. Gillock's law firm preparing for this case. From a review of the record it seems Mr. Mehesan was intimately involved in much of the discovery in this case, including appearing at most of the depositions. Mr. Gillock indicated his involvement in these pretrial activities was limited to reports from ... Mersch .... Despite this lack of involvement in pretrial matters, Mr. Gillock was listed as lead counsel for trial. As lead counsel Mr. Gillock must have worked closely with Mr. Mehesan in preparation for, at least, the actual trial.... It naturally flows that all aspects of this case were discussed between the two, and the court would assume that as professionals they necessarily had to have a correlated case preparation to perform their respective functions to participate in the trial as co-counsel .... [T]his court ... does feel the closeness of this association requires Mr. Mehesan's disqualification to stand ....
Since the district court's decision to disqualify Mehesan was within its discretion, and since it is evident from the above that the district court properly exercised its discretion, I would deny the petition.
SHEARING and LEAVITT, JJ., concur.
NOTES
[1] On December 20, 1999, the Southern Nevada Panel denied the petition by a split decision. On January 27, 2000, the panel referred the matter for reconsideration by the full court and vacated its order denying the petition.
[2] Although Dr. Zapinsky is still a party in the underlying action, he is not a party to this proceeding.
[3] SCR 160(2) provides:

When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 156 and 159(2) that is material to the matter.
[4] Relying on Collier v. Legakes, 98 Nev. 307, 646 P.2d 1219 (1982), and the fact that Nevada has not adopted Canon 9 of the 1969 Model Code of Professional Responsibility, which states that "a lawyer should avoid even the appearance of professional impropriety," petitioners assert that disqualification cannot be based on an appearance of impropriety. Collier, which addresses individual and vicarious disqualification of prosecutors in criminal cases, does not support petitioners' argument. To the contrary, Collier recognizes that disqualification may be warranted if an appearance of unfairness or impropriety is great enough to undermine public trust and confidence in the judicial system. See id. at 310, 646 P.2d at 1221. That is not the case here.
[5] In addition, we vacate our previous order staying all proceedings in the underlying district court case, No. A357067.
[6] The Honorable Brent T. Adams, Judge of the Second Judicial District Court, was designated by the Governor to sit in place of the Honorable Cliff Young, Justice, who voluntarily recused himself from participation in the decision of this matter. Nev. Const. art. 6, § 4.
[1] SCR 156 is entitled "Confidentiality of information" and in subsection (1) states that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation." Thus, confidential information does not necessarily encompass only privileged information. See Phoenix Founders, Inc. v. Marshall, 887 S.W.2d 831, 834 (Tex.1994).
[2] In Meat Price, the Eighth Circuit Court of Appeals ruled that it had jurisdiction, under 28 U.S.C. § 1291 (1976 & Supp. II 1978), to decide interlocutory appeals from orders denying motions to disqualify counsel. Id. at 164-65. However, in Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the United States Supreme Court held that orders denying motions to disqualify counsel are not appealable final decisions under § 1291. Although the Court did not specifically overrule Meat Price, it held that the Courts of Appeals are without jurisdiction to hear such appeals. Id. Nevertheless, the holding in Firestone does not impact the legal analysis contained in Meat Price.
[3] This is never required under Ciaffone.
[4] Texas permits screening and utilizes a conclusive presumption that a paralegal or legal assistant who worked on a case imparted confidences and secrets. In In Re American Home Products, the Texas Supreme Court noted that the issue is not whether secrets were imparted but whether there is a genuine threat of disclosure. 985 S.W.2d at 74.