Agosti, J.,
with whom Shearing and Leavitt, JJ., agree,
dissenting:
The decision to disqualify counsel is within the broad and sound discretion of the district court. Absent a showing of abuse of discretion, the district court’s determination- should not be disturbed. See Cronin v. District Court, 105 Nev. 635, 640, 781 P.2d 1150, 1153 (1989). The reason for leaving questions of attorney disqualification to the district court is that the primary responsibility for controlling lawyers’ conduct in the district court lies with that court, not with an appellate court. Unified Sewerage Agency of Washington County, Or. v. Jelco Inc., 646 F.2d 1339, 1351 (9th Cir. 1981). In my opinion, the district court properly exercised its discretion in disqualifying the co-counsel from further representation of the petitioners. Therefore, I dissent.
Attorney Neil Galatz had represented John S. Thalgott, M.D., at proceedings initiated against Dr. Thalgott by Florence and David Brown before what was at the time known as the medical-legal screening panel. Galatz’s paralegal, Lucrezia Smith, directly assisted Galatz in that representation. She subsequently accepted employment with the Gillock firm. There is no question that, while employed by Galatz, Smith acquired confidential information[1] pertaining to Dr. Thalgott’s defense against the Browns’ action. It is clear that Smith’s employment at the Gillock firm requires disqualification of the Gillock firm from representation *1208 of the Browns in their medical malpractice action against Dr. Thalgott. See SCR 160(2); SCR 187; Ciaffone v. District Court, 113 Nev. 1165, 945 P.2d 950 (1997). However, the district court also disqualified co-counsel, Thomas C. Mehesan, along with the Gillock firm.
In Ciaffone, we rejected screening as a means of protecting the confidential attorney-client relationship from a non-lawyer’s breach of confidentiality. 113 Nev. at 1168, 945 P.2d at 952-53. Instead, we adopted a per se rule of disqualification, imputing the non-lawyer employee’s knowledge to the attorney.
I agree with the majority in rejecting a per se rule of double disqualification of co-counsel simply because a conflict is imputed first to the attorney whose employee obtained confidential information during prior employment. I believe that co-counsel may be sufficiently distanced from the imputed conflict that disqualification may not be necessary. However, I disagree with the test applied by the majority to determine that disqualification is not warranted in this case.
The majority has determined that no conflict of interest may be imputed to Mehesan because Dr. Thalgott cannot prove by a reasonable probability that Mehesan actually acquired confidential information originating from Smith and because the “equities” do not favor disqualification. This novel test imposes an impossible burden upon Dr. Thalgott.
This court previously applied an apparently slightly, but actually significantly, different test for disqualification in Cronin. Cronin did not involve an allegation that disqualification was warranted for breach of client confidences or for imputed disqualification based upon a member of the firm actually possessing the adverse party’s confidentially obtained information. Cronin involved violations by counsel of SCR 182, which prohibits an attorney from communicating with an adverse party who is represented by an attorney without the consent of the attorney. Citing Shelton v. Hess, 599 F. Supp. 905 (S.D. Tex. 1984), we adopted a two-pronged test in Cronin. First, “to prevail on a motion to disqualify opposing counsel for an alleged ethical violation, the moving party must first establish ‘at least a reasonable possibility that some specifically identifiable impropriety did in fact occur.’ ’ ’ 105 Nev. at 641, 781 P.2d at 1153 (emphasis added) (quoting Shelton, 599 F. Supp. at 909). Second, the moving party must also establish that “ ‘the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer’s continued participation in a particular case.’ ’ ’ Id. This test is the one utilized by the United States Court of Appeals for the Fifth Circuit to determine disqualification based upon the appearance of impropriety. See Woods v. Covington County Bank, 537 F.2d 804, *1209 813 (5th Cir. 1976). The question posed in this case is not one concerning the appearance of impropriety.
Both Shelton and Cronin are inapposite to the question of an imputed disqualification of co-counsel as both cases dealt with an attorney’s direct communications with the adverse party’s managing employees without the consent of counsel for the adverse party. In Shelton, two tests were cited with approval. The two-pronged test that was adopted in Cronin wás applied in Shelton because, as mentioned in Shelton, the moving party had specifically alleged that the communications violated Canon 9 of the Texas Code of Professional Responsibility, which provides that a lawyer should avoid even the appearance of impropriety. Shelton also applied a three-part balancing test to resolve the specific question of disqualification based upon an allegation of a breach of DR 7-104 of Canon 7 of the Texas Code of Professional Responsibility which forbids communication with an adverse party without the consent of the party’s attorney. That test was originally articulated in Meat Price Investigators Association v. Spencer Foods, Inc., 572 F.2d 163 (8th Cir. 1978).[2] That test identifies three competing interests that must be balanced: “(1) the client’s interest in being represented by counsel of its choice; (2) the opposing party’s interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public’s interest in the scrupulous administration of justice.” Id. at 165.
Setting aside for a moment the majority’s modification of the two-pronged test from a reasonable possibility to a reasonable probability, the Cronin test makes sense in situations where, as in Shelton, an attorney’s speaking to an adverse party’s managerial employees without counsel’s knowledge or consent raises legitimate questions concerning the appearance of impropriety. It makes less sense where, as here, the one asserting the conflict actually provided confidential information to his counsel and the information was shared with an employee who later took up employment with an attorney who was adversely involved in litigation over a substantially related matter. The client imparted the confidences without ever expecting that the attorney or employee would join the “enemy camp.” In both Shelton and Cronin, the *1210 employees knew they were speaking to an attorney who represented interests adverse to their employer’s.
Of greater concern still, the majority has elevated the burden imposed in the first prong of the Cronin test from proof of a reasonable possibility to a reasonable probability and has offered no justification in logic or legal authority for the enhancement.
The majority’s test requires that Dr. Thalgott prove by a reasonable probability that Smith actually shared confidential information with Gillock[3] and with Mehesan directly or that the information was provided to Mehesan through Gillock. As noted in In re American Home Products Corp., 985 S.W.2d 68, 74 (Tex. 1998), placing the burden of proof on the moving party forces the party to reveal the very confidences sought to be protected.[4]
Dr. Thalgott can never meet the first prong of the majority’s test, establishing by a reasonable probability that some specifically identifiable impropriety did in fact occur, without violating the very confidences sought to be protected. In addition, this proof requirement compels a great expenditure of time and resources. Dr. Thalgott will either have to engage in discovery on the issue of what Smith learned through her employment with Galatz or be placed in a position of disclosing the confidences himself in order to establish that the Browns’ anticipated strategy or tactics take this information into account.
The United States Court of Appeals for the Third Circuit rejected a per se rule disqualifying all co-counsel if one co-counsel is disqualified for ethical reasons in Akerly v. Red Barn System, Inc., 551 F.2d 539 (3d Cir. 1977). The court stated, “Instead, we adhere to ... a careful sifting of all of the facts and circumstances.” Id. at 543. Akerly was one of many factually similar cases discussed in Essex Chemical Corp. v. Hartford Accident & Indemnity Co., 993 F. Supp. 241, 247 (D.N.J. 1998). Essex considered the disqualification of all defense counsel who had participated in a “joint defense agreement” with an attorney who was disqualified for imputed knowledge arising out of a member of the firm’s prior representation of Essex. The Essex court also rejected a per se rule of double disqualification based upon imputed knowledge. In Essex, like the case at hand, the disqualified attorney was not the member or employee of the firm who had previously represented Essex, just as Gillock had not previously represented Dr. Thalgott. The conflict arose because of *1211 another member of the firm’s prior representation of Essex, just as Smith’s prior employment with Galatz caused a conflict. The Essex court gleaned a two-part test from the cases it analyzed. It stated the need for
a careful review of the facts to determine: (1) what, if any, confidences were actually shared between the tainted attorney and the attorney sought to be disqualified, where the tainted attorney did not represent the former client in question and (2) the nature of the relationship between the tainted attorney and the attorney sought to be disqualified.
Id. at 251-52. However, the Essex court did not state with what degree of probability the trial court must find that confidences were shared. Given the impossibility of establishing such a thing by a probability, I advocate the reasonable possibility standard articulated in Shelton and Cronin.
I believe the moving party should establish facts from which it may be concluded directly or by inference that confidential disclosure is a reasonable possibility. The second part of the majority’s test is unnecessary for three reasons. First, that prong is designed to address avoidance of the appearance of impropriety. Model Canon 9, which addresses avoidance of the appearance of impropriety, was never adopted in Nevada. Second, I can think of no reason to require such considerations when disqualification is sought because a reasonable possibility exists that client confidences have actually been breached. These considerations are not required in any other jurisdiction when the question is whether client confidences might have been disclosed, as far as I can discern. Third, I believe we must provide greater protection for the sanctity of confidences revealed within the attorney-client relationship than for the opposing party’s desire to retain the attorney of his or her choice.
The majority would also require Dr. Thalgott to demonstrate prejudice if disqualification is not granted. In Cronin, we did not require a party to prove prejudice. Cronin requires, as acknowledged by the majority, that the district court balance “the prejudices that will inure” to the parties as a result of its decision. 105 Nev. at 640, 781 P.2d at 1153. This is an important distinction since Dr. Thalgott will not know until he has proceeded to trial against co-counsel whether he has been prejudiced or not. I submit the court must define “the prejudices that will inure” to Dr. Thalgott as the threat, rather than the certainty, that his confidences will be used by his adversary to gain an advantage. The district court needs to assess the reality of that threat. Rather than balancing “the prejudices that will inure,” I prefer the Essex court’s approach, which is to balance the hardships. 993 F. Supp. at 254. This is certainly the meaning intended by the language in *1212 Cronin. I believe the majority has tortured Cronin’s language regarding prejudices and created a new and unwarranted requirement. The Essex court stated that “the court must balance the hardships to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed.” Id. at 254; see Carlyle Towers Condom. Ass’n, Inc. v. Crossland Sav., FSB, 944 F. Supp. 341, 345 (D.N.J. 1996) (“[A] delicate balance must be maintained between ‘the sacrosanct privacy of the attorney-client relationship . . . and the prerogative of a party to proceed with counsel of its choice.’ ” (quoting Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983))).
The majority has conceded, as it must, a reasonable possibility that disclosure was made. Indeed, the real possibility that disclosure occurred is evident from the very close and unique relationship Mehesan bore to the Gillock firm in the context of this case. Applying the “careful sifting of all of the facts and circumstances” requirement of Akerly, 551 F.2d at 543, and considering “the nature of the relationship between the tainted attorney and the attorney sought to be disqualified” as required in Essex, 993 F. Supp. at 252, I note that the district court had the following facts before it.
Mehesan ordinarily worked out of his home. While representing the Browns in their medical malpractice action against Dr. Thalgott, Mehesan variously used an empty office or a conference room at the Gillock firm to review medical records and discovery documents, to prepare for court appearances, to take depositions and to meet with defense counsel. Mehesan utilized the services of a Gillock firm secretary and a Gillock firm paralegal. He consulted with Julie Mersch, a Gillock firm associate involved in the Browns’ action against Dr. Thalgott, and worked directly with Gillock on trial preparation.
Although the district court based its decision on the need to avoid the appearance of impropriety, it did not abuse its discretion in disqualifying Mehesan. A careftil review of the district court’s order reveals that the district court performed exactly the kind of analysis advocated by Essex and the first prong of Shelton and Cronin. The court emphasized that it rejected a per se double imputation rule. It stated:
This court does not rule on the particular test that should be applied in the co-counsel situation. An examination of the relationship between co-counsels in this case will suffice.
Mr. Mehesan worked closely with members of Mr. Gillock’s law firm preparing for this case. From a review of the record it seems Mr. Mehesan was intimately involved in much of the discovery in this case, including appearing at *1213 most of the depositions. Mr. Gillock indicated his involvement in these pretrial activities was limited to reports from . . . Mersch .... Despite this lack of involvement in pretrial matters, Mr. Gillock was listed as lead counsel for trial. As lead counsel Mr. Gillock must have worked closely with Mr. Mehesan in preparation for, at least, the actual trial .... It naturally flows that all aspects of this case were discussed between the two, and the court would assume that as professionals they necessarily had to have a correlated case preparation to perform their respective functions to participate in the trial as co-counsel.... [T]his court. . . does feel the closeness of this association requires Mr. Mehesan’s disqualification to stand ....
Since the district court’s decision to disqualify Mehesan was within its discretion, and since it is evident from the above that the district court properly exercised its discretion, I would deny the petition.

 SCR 156 is entitled “Confidentiality of information” and in subsection (1) states that “[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation.” Thus, confidential information does not necessarily encompass only privileged information. See Phoenix Founders, Inc. v. Marshall, 887 S.W.2d 831, 834 (Tex. 1994).

 In Meat Price, the Eighth Circuit Court of Appeals ruled that it had jurisdiction, under 28 U.S.C. § 1291 (1976 & Supp. II 1978), to decide interlocutory appeals from orders denying motions to disqualify counsel. Id. at 164-65. However, in Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379 (1981), the United States Supreme Court held that orders denying motions to disqualify counsel are not appealable final decisions under § 1291. Although the Court did not specifically overrule Meat Price, it held that the Courts of Appeals are without jurisdiction to hear such appeals. Id. Nevertheless, the holding in Firestone does not impact the legal analysis contained in Meat Price.

 This is never required under Ciaffone.

 Texas permits screening and utilizes a conclusive presumption that a paralegal or legal assistant who worked on a case imparted confidences and secrets. In In Re American Home Products, the Texas Supreme Court noted that the issue is not whether secrets were imparted but whether there is a genuine threat of disclosure. 985 S.W.2d at 74.